**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CLARENCE J. ROBINSON,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **CIVIL NO. 3:CV-11-0631** |
| **v.** | : | |
| | : | **(Judge Caputo)** |
| **REGIONAL DIRECTOR J.L.** | : | |
| **NORWOOD, *et al.*,** | : | |
| | : | |
| **Defendants** | : | |

**M E M O R A N D U M**

I.      **Introduction**

On April 5, 2011, Plaintiff Clarence J. Robinson, a federal prisoner formerly

incarcerated at the Lewisburg United States Penitentiary (USP-Lewisburg), in

Lewisburg, Pennsylvania, filed this *Bivens*[1] action pursuant to 28 U.S.C. § 1331.[2]

Named as defendants are the following Bureau of Prisons (BOP) employees:  BOP

Northeast Regional Director J. L. Norwood; BOP National Inmate Appeals Administrator

Harrell Watts; and Warden B.A. Bledsoe.

---

[1]  In *Bivens*, the Supreme Court held that a plaintiff may obtain damages for injuries caused by a federal agent acting "under color of his authority" in violation of a claimant's constitutionally protected rights.  *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 395, 91 S.Ct. 1999, 2004, 29 L.Ed.2d 619 (1971). *Bivens* actions are the federal counterpart to § 1983 claims brought against state officials. *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004) (citing *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 800 (3d Cir. 2001)).  "[C]ourts have generally relied upon the principles developed in the case law applying section 1983 to establish the outer perimeters of a *Bivens* claim against federal officials."  *Schrob v. Catterson*, 948 F.2d 1402, 1409 (3d Cir. 1991).

[2]  For the convenience of the reader of this document in electronic format, hyperlinks to authority cited herein have been inserted.  The Court accepts no responsibility for, and does not endorse, any product, organization, or content any hyperlinked site, or at any site to which that site might be linked.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of this Court.

Mr. Robinson avers that "the Federal Bureau of Prisons is trying to compel [him] to participate in a non-punitive program ... called the (SMU) Special Management Unit." (Doc. 1, Compl., p. 2.)[3]  As relief, he seeks his immediate release from the SMU and monetary damages "for every injury I've suffered."  (*Id.*, p. 4.)

Presently before the Court is the BOP Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment.  (Docs. 13, 36, 47 and 57.)  Mr. Robinson has filed a response to Defendants' motion, and Defendants have filed a Reply Brief. (Docs. 44 and 50.)  Also pending are three Motions to Amend the Complaint.  (Docs. 36, 47 and 57.)  Mr. Robinson did not brief two of the three motions as required by Local Rules 7.5.[4]  Likewise, Mr. Robinson did not submit a proposed amended complaint in support of any of his motions as required by Local Rule 15.1.[5]  Defendants filed briefs in opposition to each motion to amend.  (Docs. 39, 51 and 59.)

For the reasons set forth below, the Defendants' motion for summary judgment will be granted and Plaintiff's motions will be denied.

---

[3]  Unless otherwise noted, all citations to the record reflect the docket number and page number assigned by the Electronic Case Filing system (ECF) rather than the page number of the original document.

[4]  Local Rule 7.5 requires that a party filing a motions shall file a brief in support of the motion within fourteen days of filing the motion.  *See* M.D. Local Rule 7.5.  If a timely supporting brief is not filed "the motion shall be deemed withdrawn."  *Id.*

[5]  Local Rule 15.1 requires that when a party files a motion to file an amended pleading, "the proposed amended pleading must be retyped or reprinted so that it will be complete in itself including exhibits" and shall be filed "as an attachment to the motion." *See* M.D. Local Rule 15.1.

## II.    Undisputed Facts

### A.    The BOP's SMU Programs

The SMU is a non-punitive program that was implemented by the BOP to manage inmates who have been involved in, or played a leadership role in, a disruptive incident involving some type of gang activity (racial, geographic or otherwise), or who have a significant disciplinary history and have chronically not been able to function in general population, or has otherwise participated in, or were associated with, activity such that greater management of the inmate's interaction with other persons is necessary to ensure the safety, security, or orderly operation of BOP facilities, or for the protection of the public.  (Doc. 16, Defs.' Statement of Material Facts (DSMF), ¶ 3 and ¶ 10.)  The SMU provides inmates with a number of self-study and individualized activities geared toward the development of behavior and values that will allow for them to function successfully in general population institutions.  (*Id*. ¶ 4.)  The SMU program encompasses a multi-phase approach designed to teach inmates self-discipline, pro-social values, and to facilitate the participants' ability to successfully coexist with members of other geographical, cultural and religious backgrounds.  (*Id*. ¶ 5.)  Ordinarily, the SMU program is completed in 18-24 months.  (*Id*. ¶ 6.)  An inmate's progression through the SMU's four program levels is based on their satisfactory compliance and completion of behavioral and programming objectives specific to each level as evaluated by institution and SMU staff.  *See* Doc. 16-1, Attach. B, Program Statement P5217.01, *Special Management Units*, at pp. 21-24.  However, if an inmate continues to exhibit disruptive conduct after 6 additional months in the SMU, the inmate

may be referred for designation to another appropriate facility, consistent with the orderly running and operations of BOP institutions. (*Id*., p. 25.)

USP-Lewisburg's SMU began accepting inmates in September 2002. (DSMF ¶1.) At that time, the SMU was confined to one housing unit at the facility and housed approximately 80 inmates. (*Id*. ¶ 2.) In 2009, the BOP expanded USP-Lewisburg's SMU program to an institution-wide program with the exception of a work cadre unit. (*Id*. ¶¶ 2, 7-8.) With respect to inmates like Mr. Robinson who have been referred for SMU participation after November 19, 2008, the BOP's Program Statement 5217.01, *Special Management Units*, applies and sets forth the specific "referral procedures" for placement in the SMU program. (*Id*. ¶11.) The referral procedure includes the following:

> a. referral by the Unit Team to the Warden which, once approved by the Warden, is submitted to the Regional Director;
>
> b. if the Regional Director determines sufficient evidence exists, a hearing is conducted by a Hearing Examiner to determine whether the inmate meets the criteria for SMU designation;
>
> i. 24-hour advance pre-hearing notice is provided to the inmate giving sufficiently detailed explanation of the reasons for the referral;
>
> ii. the inmate is provided the opportunity to appear at the hearing, make an oral statement and present documentary evidence and written witness statements;
>
> c. based on information obtained during the referral process and presented at the hearing, the Hearing Examiner will consider whether the inmate meets the criteria for the SMU program. The Hearing Examiner will make a recommendation to the Designation and Sentence

Computation Center (DSCC) which will review the report, and after consultation with the Assistant Director, Correctional Programs Division, Central Office, indicate whether SMU referral is approved;

d.  The inmate is provided the post-decision notice and his right to appeal.

*Id*. ¶11 and Doc. 16-1, pp.16-18.

## B.    Mr. Robinson's SMU Placement

Mr. Robinson is presently serving a life sentence for drug related charges.  *See* Doc. 16-1 at p. 2, Romano Decl., ¶ 2.  On June 23, 2009, Defendant Norwood was the Warden of USP-Victorville, in Victorville, California where Mr. Robinson was housed. (DSMF ¶12.)  On this date, Warden Norwood approved a request from Mr. Robinson's Unit Team to transfer him to USP-Lewisburg's SMU program.  (*Id*. ¶13; *see also* Doc. 16-1, p. 28, Request for Transfer/Application of Management Variable.)  The rationale for his referral was that:

> Inmate Robinson has received several serious incident reports while at USP Victorville to include, Possession of a Weapon, Possessing Intoxicants and Engaging in Sexual Acts.  Inmate Robinson has disregarded the rules and regulations at this facility and has demonstrated he has no intention of modifying his behavior.  His conduct not only disrupts the good orderly running of the facility, but also creates an unsafe environment for inmates and staff alike.
>
> The Unit Team concurs, this offender requires greater controls and supervision than a traditional penitentiary setting provides.  Accordingly, the Unit Team requests this offender be considered for transfer to the Special Management Unit at USP Lewisburg.

DSMF ¶ 14.[6]  On August 7, 2009, Mr. Robinson received notification that he was scheduled for a hearing before a Hearing Administrator to determine whether he should be transferred to a SMU.  (*Id*. ¶15;[7] *see also* Doc. 16-1, pp. 30-33.)  He was advised of the reason for his referral — his "poor institutional adjustment" and "incident reports for Engaging in Sexual Acts 2x, Possession of a Dangerous Weapon, and Possessing Intoxicants" which render him a management problem and a disruption to the orderly running of the institution.  (DSMF ¶ 15.)  He was also provided with notice of his opportunity to appear at the hearing; to make an oral statement; to present documentary evidence and written witness statements on his behalf; and his right to receive a copy of the Hearing Administrator's Report and right to appeal the decision. *See* Doc. 16-1, p. 32.  Mr. Robinson received his referral hearing on August 7, 2009. (DSMF ¶ 16; Doc. 16-1, p. 34, Hearing Administrator's Report on Referral for Designation to a SMU.)  Mr. Robinson appeared at the hearing via telephone-conference and made an oral statement which was summarized by the Hearing Administrator as follows: "I've been down for 14 years.  No fights.  No drugs.  No violence.  I don't know why would someone put me on the list referral for SMU designation."  Doc. 16-1, p. 34; DSMF ¶ 18.  He did not provide any documentation or witness statements for the Hearing Administrator to consider.  (DSMF ¶19.)  Mr.

---

[6]  Mr. Robinson challenges this statement to the extent that the Case Manager who prepared the document was not a member of his Unit Team.  *See* Doc. 45, Pl.'s Separate and Concise Statement of Material Facts (PSMF), p. 2.)  Mr. Robinson, however, does not challenge the content of the averment, i.e. the accuracy of the recitation of his disciplinary history.

[7]  Mr. Robinson confirms that he received notice of the hearing on August 7, 2009, and the hearing was held on August 13, 2009.  PSMF, pp. 2-3.  He remarks, however, that he was removed from general population on August 6, 2009, prior to his hearing.  (*Id*.)

Robinson argues he could not have provided witnesses or documentation at this hearing but does not specify why he could not do so. (PSMF, p. 3.)

The Hearing Administrator found that Mr. Robinson met the following criteria for SMU designation: (1) "The inmate has a history of serious and disruptive disciplinary infractions" and (2) "The inmate otherwise participated in or was associated with activity such that greater management of the inmate's interaction with other persons is necessary to ensure the safety, security, or orderly operation of the Bureau facilities or protection of the public." Doc. 16-1, p. 35. In explaining his findings, the Hearing Administrator held that Mr. Robinson had:

> committed various serious offenses including, Possessing a weapon (x2); Engaging in a sexual act (x3); and Possessing Intoxicants (x3). It also shows Robinson has committed many other moderate offenses including, being absent from an assignment (x2); and failure to follow safety regulations (x2), amongst other offenses. Moreover, the record shows Robinson has committed 4 serious offenses and 2 moderate offenses during the past 12 months.

Doc. 16-1, p. 36. The report was completed on August 18, 2009. (*Id.*) The following day, based on the Hearing Administrator's report, the BOP's Western Regional Director recommended that Mr. Robinson be designated to a SMU. (*Id.*, p. 37.) Mr. Robinson avers that that the Western Regional Director's designee, and not the Regional Director, signed the recommendation for his placement in the SMU. *See* PSMF, pp. 3-4. The Regional Director's recommendation was approved by the BOP's DSCC on September 28, 2009. (*Id.*)

Mr. Robinson arrived at USP-Lewisburg on March 1, 2010. (*Id.*, ¶ 24; Doc. 1, Compl., p. 2.) He filed an administrative grievance contesting his SMU placement and

received a response from Warden Bledsoe on May 18, 2010. (*Id*.) Mr. Robinson received a copy of the Hearing Administrator's notice of findings, the final decision, and his right to appeal on March 19, 2010. (Doc. 16-1, p. 37.) Mr. Robinson appealed this decision to the Northeast Regional Office and received a response on June 23, 2010, from J.L. Norwood. (Doc. 1, Compl.) Defendant Norwood was the Warden at the institution where staff recommended his transfer to the SMU. (*Id*.) Mr. Robinson then filed an appeal to Central Office. Harrell Watts, denied the grievance appeal. (*Id*., p. 3.)

In November 2011, Mr. Robinson was transferred from USP-Lewisburg to FCI-Oakdale. *See* Doc. 21, Change of Address. He returned to USP-Lewisburg on July 9, 2012, and was placed in the SMU. *See* Doc. 58, Mot. to Amend.

### C. Motions to Amend

Presently before the Court are Mr. Robinson's three Motions to Amend the Complaint. (Docs. 36, 47 and 57.) On April 20, 2012, Mr. Robinson filed his first Motion to Amend the Complaint to include two claims of retaliation against a non-party. (Doc. 36, Mot. to Amend) He claims that despite not "participating" in the SMU program, prison officials have listed him as participating in Levels 1, 2 and 3 of the program. (Doc. 36, p. 2.) He claims Unit Manager Brewer (non-party) verbally threatened him on April 2, 2010, by stating that if he failed to participate in the SMU program he would remain in the program for 30 months.[8] (*Id*., pp. 2-3.) He also

---

[8] This event pre-dates Mr. Robinson's filing of the Complaint.

concludes that prison officials at USP-Lewisburg interfered with his legal mail in retaliation for his filing of this lawsuit.[9] (*Id*., p. 3.)  Defendants submit a copy of the BOP's computerized SENTRY report of Mr. Robinson's administrative remedies filed from March 1, 2009 through May 6, 2012.  (Doc. 39-1, Romano Decl., Attach. A, pp. 4-13.)  Mr. Robinson has not filed any administrative remedies alleging prison officials have retaliated against him for filing this action.  (*Id*.)

In his second Motion to Amend (Doc. 47), Mr. Robinson seeks to add two new additional parties to his action, the "active Warden" at USP Lewisburg who signed the response to his grievance at the institutional level on May 18, 2010, and Roberta Truman who signed his appeal at the Central Office level on April 15, 2011.  (Doc. 47, pp. 2-3.)  Defendants argue that to allow any amendment to name these individuals as defendants would be futile as after-the-fact review of a grievance or appeal is not enough to establish personal involvement and because Mr. Robinson seeks to impose liability upon them solely in their supervisory capacities.  (Doc. 51, Defs.' Opp'n Br. Pl.'s Mot. to Amend., p. 6.)

Mr. Robinson's third Motion to Amend alleges that in July 2012, when he returned to USP-Lewisburg, he was ordered to "take a SMU inmate as a cellmate." Doc. 58, Pl.'s Supp. Br. Mot. to Amend, pp. 2-3.  He advised prison officials that he did not "wish to be housed with SMU inmates and [that he] was willing to accept the consequences, if there were any for [his] decision."  *Id*., p. 2.  He claims he was then

---

[9] Mr. Robinson alleges he mailed his opposition to Defendants' motion in September 2011.  (*Id*.)  However, after it was not received by the Court or Defendants, Mr. Robinson requested, and received, an enlargement of time to re-file his opposition materials.

placed in Mr. Brewer's (non-party) unit where he was verbally harassed, physically assaulted and restrained to a chair from July 9, 2012 to July 11, 2012.  (*Id.*, p. 3.)  He claims he was denied food, drink or lavatory facilities during this time.  (*Id.*, p. 3.)  He later learned that "an officer fabricated an incident [report] against [him] saying [he] threatened to kill somebody" and that he refused to return his food tray.  (*Id.*, p. 4.)  Mr. Robinson filed his motion to amend approximately one week after the events he complains of in his third motion to amend.  (Doc. 57, p. 2; Doc. 59, Defs.' Opp'n Br. Pl.'s Mot. to Amend, p. 6.)  Mr. Robinson does not identify the officers involved in this alleged incident.  *See* Docs. 57-58.

Mr. Robinson only briefed one of his three motions to amend.  Furthermore, he has not filed a draft amended complaint in conjunction with any of his motions.


## IV.    Relevant Legal Standards

### A.    Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007), meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550

U.S. at 556, 127 S.Ct. at 1965).  The pleading standard of Federal Rule of Civil Procedure 8 does not require "detailed factual allegations," but "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1959, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1950.  "Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer*, ___ U.S. ___, ___, 131 S.Ct. 1289, 1296, 179 L.Ed.2d 233 (2011).  A complaint "does not require 'detailed factual allegations,' but it demands more than an unadorned, 'the-defendant-unlawfully-harmed-me accusation.' " *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964).  A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement' " is not sufficient. *Id.*

When determining the sufficiency of a complaint, a court must undertake a three-part inquiry.  *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  The inquiry involves: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  *Id.*

**B.    Motion for Summary Judgment**

Under Fed. R. Civ. P. 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In pertinent part, parties moving for, or opposing, summary judgment must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to nonmoving party.  *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).  An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law.  *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510).  "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot

rest solely on assertions made in the pleadings, legal memoranda, or oral argument."

*Berckeley Inv. Group, Ltd. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).  The moving party

has the burden of showing the absence of a genuine issue of material fact, but the

nonmoving party must present affirmative evidence from which a jury might return a

verdict in the nonmoving party's favor.  *Liberty Lobby*, 477 U.S. at 256-57, 106 S.Ct. at

2514.  "The non-moving party cannot rest on mere pleadings or allegations,"  *El v.*

*Southeastern Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007), but "must set forth

specific facts showing that there is a genuine issue for trial."  *Saldana v. Kmart Corp.*

, 260 F.3d 228, 231 - 232 (3d Cir. 2001).  Allegations made without evidentiary support

may be disregarded.  *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000).  "Conclusory,

self-serving affidavits are insufficient to withstand a motion for summary judgment."

*Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002).  Hearsay testimony

contained in affidavits or statements that would be inadmissible at trial may not be

included in an affidavit to oppose summary judgment.  *Petruzzi's IGA Supermarkets,*

*Inc. v. Darling-Delaware Comp.*, 998 F.2d 1224, 1234 n. 9 (3d Cir. 1993).  The

non-moving party must raise "more than a mere scintilla of evidence in its favor" in

order to overcome a summary judgment motion. *Williams v. Borough of West Chester*,

891 F.2d 458, 460 (3d Cir. 1989).


### C.    Motion to Amend

The filing of an Amended Complaint is governed by Fed. R. Civ. P. 15(a):

> (1)  Amending as a Matter of Course.  A party may amend
> its pleading once as a matter of course within:

> (A)  21 days after serving it, or
>
> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>
> (2) Other Amendments.  In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a).  Leave to amend the pleadings is generally given freely.  *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).  However, "[a] court may deny a request to amend a complaint if the amendment is futile, *i.e.* the proposed amended complaint fails to state a claim upon which relief can be granted."  *Martino v. EverHome Mortg.*, 411 F. App'x 508, 511 (3d Cir. 2010)(citing *Alvin*, *supra*).


### D.      BOP Administrative Remedy Procedures

The Prison Litigation Reform Act (PLRA) requires that a prisoner asserting a *Bivens* claim first exhaust all administrative remedies available to him.  *See* 42 U.S.C. § 1997e; *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 988, 152 L.Ed.2d 12 (2002).  The exhaustion requirement of the PLRA is one of "proper exhaustion."  *Woodford v. Ngo*, 548 U.S. 81, 84, 126 S.Ct. 2378, 2383, 165 L.Ed.2d 368 (2006). Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim.  *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004).  Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing

a civil-rights action. *Jones v. Bock*, 549 U.S. 199, 223-24, 127 S.Ct. 910, 924-26, 166 L.Ed.2d 798 (2007); *Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006)(per curiam)(nonprecedential)(citing *Ahmed v. Dragovich*, 297 F.3d 201, 209 & n. 9 (3d Cir. 2002)).

Retaliation is a separate claim and prisoners must raise the specific claim of retaliation in their prison grievance in order to exhaust administrative remedies. *See Boyd v. United States*, 396 F. App'x 793, 796 (3d Cir. 2010) ("[T]o pursue a claim in federal court based on retaliation, [a prisoner] must first have exhausted administrative remedies for that claim."); *see also Hoffenberg v. Provost*, 154 F. App'x 307, 311 (3d Cir. 2005) (retaliation claim must be presented and exhausted as a separate claim from underlying assault claim). The exhaustion requirement is mandatory and cannot be excused for "'sensitive' subject matter or 'fear of retaliation . . .'" *Pena-Ruiz v. Solorzano*, 281 F. App'x 110, 113 (3d Cir. 2008)(per curiam) (nonprecedential).

Federal inmates may challenge any aspect of their confinement by using the BOP's three-tiered Administrative Remedy process. *See* 28 C.F.R. § 542.10, *et seq*. The first step is to present the issue to the inmate's unit team through an informal resolution attempt. *See* 28 C.F.R. § 542.13(a). If that does not resolve the issue, the inmate must submit a formal request for administrative relief (BP-9) to the Warden. *See* 28 C.F.R. § 542.14(a). An inmate who is not satisfied with the Warden's response may submit an appeal to the Regional Director (BP-10). *See* 28 C.F.R. § 542.15(a). If dissatisfied with the response from the Regional Director, the inmate may submit an appeal to the BOP's Central Office (BP-11). *See* 28 C.F.R. § 542.18. No

administrative appeal is considered to have been fully and finally exhausted until it has been considered by the BOP's Central Office.  *See* 28 C.F.R. § 542.15.

## V.    Discussion

### A.    Sovereign Immunity

Mr. Robinson's claim for damages against the BOP and the Defendants in their official capacities is barred under the Eleventh Amendment.   Under the doctrine of sovereign immunity, the United States is immune from suit unless Congress has expressly waived the defense of sovereign immunity by statute.  *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983).  A plaintiff cannot proceed in a *Bivens* action for damages against the United States or an agency of the federal government for alleged deprivation of a constitutional right, *see FDIC v. Meyer*, 510 U.S. 471, 484-85, 114 S.Ct. 996, 1005, 127 L.Ed.2d 308 (1994), or against any of the individual defendants in their official capacities.  *See Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985)(a suit against a government officer in his or her official capacity is a suit against the government). Therefore, the Court will grant defendants' motion to dismiss the damages claims against the individual BOP defendants in their official capacities under Fed. R. Civ. P. 12(b)(6).

**B.     Lack of Personal Involvement of Defendants**

To state a claim under *Bivens,* the plaintiff must show that the defendant, acting under color of Federal law, deprived him of a right secured by the Constitution or laws of the United States. *Brown v. Philip Morris Inc.,* 250 F.3d 789, 800 (3d Cir. 2001). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676, 129 S.Ct. at 1948. "Because vicarious liability is inapplicable to *Bivens* and §1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id*. Participation in after-the-fact review of a grievance or appeal is not enough to establish personal involvement. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988)(finding the filing of a grievance is not enough to show the actual knowledge necessary for personal involvement); *Mincy v. Chmielsewski*, Civ. No. 12-1996, 2013 WL 49765, at *4 (3d Cir. Jan. 4, 2013)(An "officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."); *Pressley v. Beard*, 266 F. App'x 216, 218 (3d Cir. 2008)("The District Court properly dismissed these [supervisory] defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006)(nonprecedential) (allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation).

In this case, fairly construed, Mr. Robinson's claims against defendants Bledsoe, Norwood and Watts presently consist of little more than assertions of *respondeat superior* liability, coupled with his dissatisfaction with their processing of his administrative remedy appeals, assertions which as a matter of law do not suffice to state a constitutional tort claim. Accordingly, Mr. Robinson fails to allege that any of the defendants played an affirmative part in the alleged constitutional misconduct, his alleged forced participation in the SMU program. Consequently, the Complaint against them will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### C. Failure to State a Claim against Defendant Norwood in his former role as Warden of USP-Victorville.

To the extent Mr. Robinson names defendant Norwood in his former role as Warden of USP-Victorville, simply based on the fact that his SMU referral originated at USP-Victorville, and because he charges that Norwood "spearheaded the crook'ed (sic) activity at that institution," (Doc. 1), such conclusory allegations fail to state a claim. *See Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949. Here, while it is undisputed that Defendant Norwood, as Warden of USP-Victorville, signed his Unit Team's referral of Mr. Robinson for SMU participation, (*see* Doc. 16-1, p. 28), there is nothing more than Mr. Robinson's speculation that Norwood's doing so was improper. Yet, Mr. Robinson does not dispute the misconduct history cited by the BOP as the basis for their reasoning for his SMU placement. Moreover, Mr. Robinson does not suggest that Norwood, in his role as Warden, failed to properly follow the BOP's referral process once the Unit Team recommended his transfer to USP-Lewisburg's SMU program. In

sum, Mr. Robinson's vague and conclusory assertions against Norwood in his role as Warden of USP-Victorville are insufficient to state a claim and will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).


###    D.    Mr. Robinson's Due Process Rights Were Not Violated in Connection with His Placement in the SMU

The Due Process Clause of the Fourteenth Amendment of the United States Constitution provides in pertinent part: "No State shall ...deprive any person of life, liberty, or property, without due process of law. . . ."  In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. *See Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005)*; Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000).  Liberty interests may arise from the Due Process Clause itself, or from an expectation or interest created by prison policies. *Wilkinson,* 545 U.S. at 221, 125 S.Ct. at 2393 (citations omitted).

The Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on a prisoner. *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976).  In the prison context, a liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995).  The determination of what is "atypical and significant" is based on the range of conditions an inmate "may reasonably expect to encounter as a result of his or her conviction." *Asquith v. Dep't*

*of Corr.*, 186 F.3d 407, 412 (3d Cir. 1999).  "[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (quoting *Sandin*).  An inmate's placement in the BOP's SMU does not, in itself, impose hardships upon a prisoner that are "atypical and significant" due to the more austere conditions of confinement in that unit.  *See Mackey v. Smith*, 249 F. App'x 953, 954 n. 4 (3d Cir. 2007)*; see also Milhouse v. Bledsoe*, Civ. No. 1:CV-09-01953, 2011 WL 332417, at *5 (M.D. Pa. 2011)(collecting cases).

It is equally well established that prisoners neither have a constitutionally recognized liberty interest in a particular security classification nor constitutional right to be confined in a particular prison.  *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983)(inmates have no right to be confined in a particular prison);  *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)(transfer among correctional facilities does not violate inmate's constitutional rights, even where conditions in one prison are "more disagreeable" or the prison has "more severe rules"); *see also Asquith,* 186 F.3d at 410-411 (holding that inmates have no protected liberty interest in remaining in a preferred correctional facility).

Based on a review of the undisputed record before the Court, to the extent Mr. Robinson's claim that his assignment to the SMU program violated his right to due process fails as a matter of law.  It is clear from the Complaint that Mr. Robinson does not challenge his conditions of confinement while housed in the SMU.  He does not aver that he has been subject to confinement beyond his term of incarceration, or has

lost good time credits as a result of his SMU placement. *See* Doc. 1. Rather, his claim is limited to his objection to the BOP forcing him to participate in the SMU program. (*Id*.) Mr. Robinson's transfer to USP-Lewisburg's SMU program cannot form the basis of a due process claim as a federal inmate does not have a constitutionally protected liberty interest in his place of confinement, his transfer, or classification. *See Olim*, 461 U.S. at 245, 103 S.Ct. at 1745; *Meachum,* 427 U.S. at 224, 96 S.Ct. at 2538-39; *Moody v. Daggett*, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 279 n. 9, 50 L.Ed.2d 236 (1976). Likewise, Mr. Robinson's administrative confinement in the non-punitive SMU program is insufficient as a matter of law to establish the imposition of an atypical and significant hardship in relation to the ordinary incidents of prison life. *See Hewitt v. Helms*, 459 U.S. 460, 468, 103 S. Ct. 864, 870, 74 L.Ed.2d 675 (1983) ("[A]dministrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration."); *Mackey*, 249 F. App'x at 954 (Plaintiff's "placement in the SHU at USP-Lewisburg also was within 'the ordinary incidents of prison life' and thus did not violate his constitutional rights.")

Mr. Robinson's challenge to the duration of his SMU confinement, similarly fails. The undisputed record before the Court shows that his placement in the program was not indefinite. The SMU program ordinarily lasts 18-24 months. Plaintiff was transferred out of the program after approximately 20 months of enrollment. This length of time, absent any challenge to his SMU conditions of confinement, do not raise constitutional concerns. *See Siddiq v. Edlund*, 8 F. App'x 522, 524 (6th Cir. 2001) ("placement in administrative segregation [for twenty months] did not constitute an

'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' "); *Jones v. Baker*, 155 F.3d 810 (6th Cir.1998) (administrative confinement for two and one-half years was not atypical and significant) (cited approvingly in *Fraise v. Terhune*, 283 F.3d 506, 523 (3d Cir. 2002)).  Once transferred to the SMU program, there is no due process violation as a result of the prisoner's extended stay in the program for their refusal to participate in the program or incurrence of disciplinary reports.  *See Mackey*, 249 F. App'x at 955.

In this case, Mr. Robinson has not alleged any facts to suggest that his confinement in the SMU program subjected him to "atypical and significant hardship." He does not contest the misconduct history cited by the BOP as the basis for its decision to seek his placement in the SMU program.  Thus, he has failed to state a due process claim arising out of his SMU transfer and confinement because he was not deprived of a liberty interest.  Having no liberty interest, Mr. Robinson was not constitutionally entitled to any process at his SMU referral hearing and whatever flaws he believes may have occurred at that hearing are not actionable.  *Sandin*, 515 U.S. at 487, 115 S.Ct. at 2302.

As for Mr. Robinson's desire not to participate in the SMU program, that is his choice.  He may participate in the program or not.  The BOP had advised him that his refusal to participate may extend his placement in that unit.  He is aware of the consequences of his conscious election not to participate in the SMU program and must be prepared to accept those consequences of his actions.  He, however, cannot dictate to the BOP to transfer of him to another facility or housing unit simply because

of his disagreement with the BOP's housing decisions or his desire not to participate in the non-punitive SMU program.  *Olim*, 461 U.S. at 245, 103 S.Ct. at 1745.

Accordingly, because placement in the SMU program does not give rise to an "atypical and significant hardship" in relation to the ordinary incidents of prison life, Mr. Robinson's claim regarding his placement or confinement in the SMU, and any implication that he is voluntarily participating in the program, is dismissed.


**E.     Mr. Robinson's Motions to Amend are Denied as Futile**

While the Court may freely grant leave to amend a complaint, as Mr. Robinson has failed to file a brief in support of two of his three motions to amend, and his failure to file a proposed amended complaint in support of any of his motions, the Court cannot determine if any of the proposed amendments would have merit.  On this basis alone, Mr, Robinson's motions to amend are denied.

Notwithstanding this initial procedural bar to his motions, the proposed amendments Mr. Robinson suggests are either legally frivolous or futile.  With respect to the first (Doc. 36) and third (Doc. 57) motion to amend, it is clear that Mr. Robinson seeks to name new parties (Unit Manager Brewer and unidentified corrections officers) who allegedly retaliated against him for filing this lawsuit by verbally threatening him, interfered with his legal mail, and used excessive force against him in July 2012.  *See* Docs. 36, 57 and 58.  Via these motions Mr. Robinson seeks to incorporate unrelated parties and claims to his present action.  The proposed amendment and the present action do not arise out of the same transaction, occurrence, or series of transactions

or occurrences, or share common legal issues or facts. The proposed retaliation claims against Unit Manager Brewer and the John Doe corrections officers for events that transpired after the filing of his Complaint must be pursued in a separate action. To allow otherwise would defeat the purpose of Fed. R. Civ. P. 15(d) as well as the intention behind the Prison Litigation Reform Act if Mr. Robinson were allowed to tack on unrelated claims in a single lawsuit and avoid the payment of the required filing fee in a new action.[10] As such, Mr. Robinson's first and third motions to amend will be denied.

Finally, with respect to his second motion to amend (Doc. 47), Mr. Robinson seeks to add two new parties: the "active Warden" who signed the response to his grievance at the institutional level on May 18, 2010; and Roberta Truman who signed his grievance appeal at the Central Office level on April 5, 2011. (Doc. 47, pp. 2-3.) He claims these individuals participated in the violation of his constitutional rights strictly on the basis of their role in the administrative remedy process. As Defendants argue, to allow such an amend would be futile. (Doc. 51, Defs.' Opp'n Br. Mot. to Amend, pp. 5-6.) While these individual's review of his administrative remedies made them aware of his disagreement with his placement in the SMU program, "this awareness does not amount to the requisite personal involvement" required to establish liability under Section 1983. *Mincy v. Chmielsewski*, Civ. No. 12-1996, 2013 WL 49765, at *4 (3d Cir. Jan. 4, 2013). Accordingly, to allow an amendment to the original complaint to include

---

[10] Additionally, the record before the Court reveals that Mr. Robinson has not exhausted his available administrative remedies as to several, if not all, of the proposed claims.

these individuals as defendants would be futile.

For these reasons, Mr. Robinson's motions to amend will be denied.

An appropriate order follows.

/s/ **A. Richard Caputo**
**A. RICHARD CAPUTO**
**United States District Judge**

**Date:  APRIL 8, 2013**